UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x  INDEX NO.:

SIERRA EVANS,

                            Plaintiff,

                                                                    **<u>COMPLAINT</u>**

-against-                                                           **<u>JURY TRIAL DEMANDED</u>**

THE CHILDREN'S VILLAGE,

                            Defendant.
----------------------------------------------------------------x

Plaintiff, Sierra Evans, (hereinafter "Plaintiff") through her counsel, ABRAMS FENSTERMAN LLP hereby submits this Complaint and complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New York State Human Rights Law, and New York State Executive Law § 296, et seq. ("NYSHRL"). Plaintiff seeks damages to redress the injuries she suffered as a result of being retaliated against, a hostile work environment based on race, and whistleblowing.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Southern District of New York.

## PROCEDURAL PREREQUISITES

4. On or around April 24, 2025, Plaintiff received her Right to Sue letter from the EEOC.

5. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving a Right to Sue Letter.

## PARTIES

6. Plaintiff is an individual female who resides in Yonkers, New York.

7. Defendant The Children's Village (hereinafter "Defendant" and "Defendants") is a non-profit organization located in Dobbs Ferry, New York.

8. Defendant The Children's Village help refugee and immigrant children between the ages 6 to 20 with their education and housing.

## FACTS

9. Defendant's supervisor hired Plaintiff on or around November 10, 2023, as a youth care specialist.

10. Throughout her employment, Plaintiff never received any disciplinary write-ups or complaints regarding her behavior.

11. Plaintiff worked at least 40 hours a week and was paid $20 an hour.

12. Defendant Provided Plaintiff with an employee handbook.

13. Immediately upon hire Plaintiff was harassed by Defendant's employees.

14. Defendant's employees would regularly use the word "Nigga" during conversations.

15. Plaintiff reported this to her manager Mr. Palmer and Mr. Truesdale.

16. It was not uncommon for another manager Ms. Freeman to use the slur "Nigga" when talking to the children.

17. The use of the term "Nigga" continued throughout Plaintiff's employment despite her reporting it to her supervisors.

18. Plaintiff did not use the term, and she felt humiliated by its continued use during the workday.

19. In or around December 2023 Defendants' employee Ms. Moore mentioned to Plaintiff that they used melatonin in the kids' food to calm them down, and that the managers were aware of what was happening.

20. On or around January 15, 2024, Plaintiff attended a trip with Defendant's staff and kids.

21. Plaintiff worked with children ages six (6) to ten (10) years old.

22. Plaintiff witnessed Defendant's putting melatonin in the kids' sodas.

23. Plaintiff was aware that there was no parental consent allowing melatonin to be put in the kids' drinks.

24. Plaintiff disclosed to Defendant that parental consent was required to provide medication or a supplement to minor children.

25. On or around January 18, 2024, Plaintiff made a complaint to Defendant Brian Truesdale regarding what she witnessed on the trip.

26. After Plaintiff complained to Defendant Truesdale, there was no follow-up on how the situation was handled.

27. That same week Plaintiff asked Defendant's cottage manager Mr. Palmer for a meeting as she was not comfortable speaking with her direct supervisors.

28. On or around January 23, 2024, Plaintiff and Defendant's employee Palmer and Truesdale

had a meeting to discuss her complaints.

29. In that meeting Plaintiff brought up how she witnessed an employee putting melatonin in the kid's food during a school trip.

30. Plaintiff also discussed how she was not being properly trained by the staff and the bullying she was enduring from employee Santiago.

31. Defendant's employee Kayla Santiago treated Plaintiff unfairly telling her to complete additional tasks than what she was originally assigned.

32. Defendant handled the situation by speaking with Ms. Santiago to correct the behavior.

33. After the meeting Defendant advised Plaintiff if she keeps experiencing the bullying to advise them and it would be properly handled.

34. Shortly after Defendant spoke to Ms. Santiago, she went to the break room. Plaintiff was in the room when Ms. Santiago stated, "I heard I was a mean girl matter a fact I'm going to start being a bitch".

35. On or around February 3, 2024, Plaintiff reported to Defendant's supervisor Laquasia Freeman regarding the comment made by Ms. Santiago.

36. It was Plaintiff's belief that Ms. Santiago was attempting to intimidate her so that she would not make another complaint.

37. In or around February 2024, Plaintiff was sexually harassed by Defendant's employees Ms. Moore, Mr. Lawrence and Mr. Barnett.

38. Defendants' employees started to spread a rumor regarding Plaintiff having a romantic relationship with Mr. Barnett.

39. Instead of stopping the rumor, Defendant's employee Mr. Barnett would say "Well you are my wife" making the harassment worse to the point where the kids started questioning

Plaintiff about her relationship with Mr. Barnett.

40. Plaintiff felt this was sexual harassment.

41. In or around February 2024, Plaintiff made a complaint to Defendant Truesdale regarding the rumor being spread.

42. Plaintiff disclosed to Defendant that she was not feeling comfortable working around her peers due to the harassment she was enduring.

43. The following week Defendant retaliated against Plaintiff by terminating her.

44. Defendant terminated Plaintiff on March 4, 2024.

45. When Plaintiff asked why she was terminated Defendant stated it was due to her not reporting child abuse in a timely manner.

46. Plaintiff asked for a report of the alleged child abuse that occurred, Defendant never got back to her with that information.

47. As such, Defendant retaliated against Plaintiff by wrongfully terminating her after she engaged in protective activity of complaining about the hostile work environment and harassment she endured on a continuous basis while employed at The Children's Village.

48. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

49. As a result of the acts complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, and other non-pecuniary losses.

50. Upon information and belief, discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and

retaliation.

51. As Defendant's conduct has been malicious, willful, outrages, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

52. Plaintiff claims a continuous practice of discrimination and retaliation and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

53. The above are just examples of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
*(Not Against Any Individual Defendant)*

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42.U.S.C. § 2000e(f).

56. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(b).

57. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discriminate against an employee because of such employee's gender/sex.

58. Defendant violated Plaintiff's rights afforded by Title VII when Defendant created and maintained a hostile work environment because of race, and wrongful termination.

59. Defendant's unlawful acts were intentional, willful, malicious, and in violation of Plaintiff's rights afforded by Title VII.

60. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, including, but not limited to, lost income, bonuses, lost future earnings and other future

pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
*(Not Against Any Individual Defendant)*

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act,42.U.S.C. § 2000e(f).

63. Pursuant to Title VII, 42 U.S.C. § 2000e-3(a)an employer may not discriminate against any of its employees because the employee has opposed any practice made unlawful by Title VII.

64. Defendant violated Plaintiff's rights afforded by Title VII when Defendant retaliated against Plaintiff in response to her complaints of gender discrimination and sexual harassment. Defendant terminated Plaintiff after she engaged in the protected activity of complaining of sexual harassment and a hostile work environment based on race.

65. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

66. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

**AS FOR A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK STATE LAW**

67.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. New York State Executive Law§296 provides that "it shall be an unlawful discriminatory practice for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69.  Defendant engaged in unlawful discriminatory employment practice when they based on when they created and maintained a hostile work environment based on gender and race. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

70.  Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of New York State Executive Law§296.

**AS FOR A FORTH CAUSE OF ACTION**
**FOR RETALIATION UNDER NEW YORK STATE LAW**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. New York State Executive Law §296(7) provides that "it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices for bidden under this article."

73. Defendant engaged in such unlawful discriminatory practice when they terminated Plaintiff in response to her complaints of sexual harassment and a hostile work environment based on race.

**AS FOR A FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK'S WHISTLEBLOWER LAW**

74.  Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

75. Plaintiff disclosed an activity, policy or practice of the Defendant that she reasonably believed was in violation of law, rule or regulation.

76. Plaintiff disclosed that Defendant's employees were inappropriately dispensing melatonin to minor children.

77. Plaintiff objected to such activity, policy or practice.

78. As a result, Defendant took retaliatory action against Plaintiff.

79.  Defendant's retaliatory action was willful, malicious or wanton.

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Melville, New York
July 18, 2025

Respectfully submitted,

ABRAMS FENSTERMAN LLP

*John C. Luke, Jr.*
John C. Luke, Jr.
3 Dakota Dr Ste 300
Lake Success, NY 11042
T. (516) 328-2300
*Attorney for Plaintiff*

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.